Phillip S. Oberrecht, ISB No. 1904
GREENER BURKE SHOEMAKER OBERRECHT P.A.
950 W. Bannock, Suite 950
Boise, Idaho  83702
Telephone  (208) 319-2600
Facsimile  (208) 319-2601
poberrecht@greenerlaw.com

Attorneys for Education Networks of America, Inc.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDUCATION NETWORKS OF AMERICA, INC., a Delaware Corporation, | Case No. _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| STATE OF IDAHO; IDAHO DEPARTMENT OF ADMINISTRATION;  J. MICHAEL GWARTNEY, in his official capacity and personal capacity as the former Director and Chief Information Officer of the Idaho Department of Administration; ROBERT L. GEDDES, in his official capacity and personal capacity as Director of the Idaho Department of Administration; IDAHO DEPARTMENT OF JUVENILE CORRECTIONS; SHARON HARRIGFELD, in her official capacity and personal capacity as the Director of the Idaho Department of Juvenile Corrections; OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF IDAHO; LAWRENCE G. WASDEN, Attorney General for the State of Idaho; AMERICAN FALLS SCHOOL DISTRICT #381; ANOTHER CHOICE VIRTUAL CHARTER SCHOOL; BOUNDARY COUNTY SCHOOL DISTRICT #101; BRUNEAU-GRAND VIEW | |

JOINT SCHOOL DISTRICT #365; CAMAS
COUNTY DISTRICT #121; CASCADE
SCHOOL DISTRICT #422; CASTLEFORD
DISTRICT #417; COTTONWOOD JOINT
SCHOOL DISTRICT #242; EMMETT
INDEPENDENT SCHOOL DISTRICT #221;
FIRTH SCHOOL DISTRICT #59; FREMONT
COUNTY JOINT SCHOOL DISTRICT #215;
HIGHLAND SCHOOL DISTRICT #305;
IDAHO ARTS CHARTER SCHOOL; IDAHO
EDUCATIONAL SERVICES FOR THE
DEAF AND THE BLIND #596; IDAHO
DIGITAL LEARNING ACADEMY;
JEROME SCHOOL DISTRICT #261;
SALMON RIVER SCHOOL DISTRICT #243;
KAMIAH JOINT SCHOOL DISTRICT #304;
KUNA SCHOOL DISTRICT #3; MELBA
SCHOOL DISTRICT #136; WEST ADA
SCHOOL DISTRICT #2, formerly known as
MERIDIAN SCHOOL DISTRICT #2;
MIDDLETON SCHOOL DISTRICT #134;
MOSCOW SCHOOL DISTRICT #281;
MOUNTAIN HOME SCHOOL DISTRICT
#193; MOUNTAIN VIEW SCHOOL
DISTRICT #244; NAMPA SCHOOL
DISTRICT #131; NEW PLYMOUTH
SCHOOL DISTRICT #372; OROFINO JOINT
SCHOOL DISTRICT #171; PAYETTE
SCHOOL DISTRICT #371; POCATELLO/
CHUBBUCK SCHOOL DISTRICT #25;
RIRIE SCHOOL DISTRICT #252; SNAKE
RIVER SCHOOL DISTRICT #52; TETON
COUNTY SCHOOL DISTRICT #401; TWIN
FALLS SCHOOL DISTRICT #411; WEST
BONNER COUNTY SCHOOL DISTRICT
#83; WEST JEFFERSON SCHOOL
DISTRICT #253; WEST SIDE JOINT
SCHOOL DISTRICT #202; SNAKE RIVER
SCHOOL COMMUNITY LIBRARY,

Defendants.

Education Networks of America, Inc.  ("ENA"), for its complaint against the Defendants,

alleges and complains as follows:

## INTRODUCTION

1.      This is an action to recover just compensation from the State of Idaho, select individuals, acting under color of state law and in their individual capacities, and designated state agencies, school districts and libraries throughout the state of Idaho, for services rendered by ENA and accepted and used by said Defendants between 2009 and 2015.  The compensation due and owing to ENA was legally authorized and appropriated by the Idaho State Legislature. Despite acknowledging the failure to pay for services rendered, the Defendants have refused to pay more than $4 million of aging invoices.   In addition, the Attorney General has recently demanded the return of the monies that the State had previously paid on invoices that it had approved for services rendered by ENA to the State for the benefit of the State and its agencies, school districts, and libraries. (The school districts and libraries will be referred to hereinafter as "Districts.") Accordingly, ENA also seeks injunctive relief barring the Attorney General from seeking recovery of monies that it has paid for services that it ordered and accepted.

2.      As detailed in this Complaint, ENA was awarded a contract in 2009 to build and manage a "high-bandwidth telecommunications distribution system for distance learning in public schools, libraries and state agencies, referred to herein as the Idaho Education Network ("IEN").  The award was made by the State; the contract was controlled by the State; and the scope of work ENA was to perform was determined by the State, in its sole discretion.  The State has admitted that it ordered services, ENA provided services as ordered, that the State received value for the services and owes ENA payment for those services.  The Districts were entitled to order services under the same contract, ordered services, ENA provided the services as ordered, the Districts received the value of those services and the Districts owe ENA payment for those services.

3.     Despite rendering services as requested by the State of Idaho and Districts, ENA has not been paid for those services.  The State and its Districts have failed and refused to pay more than $4 million for services rendered as long ago as March 2013.

4.     Moreover, on August  9, 2016, the Idaho Attorney General demanded repayment of all sums paid by the State to ENA for the IEN, asserting that such payments for services previously rendered and paid for by the State were "advances."  This demand arrived fifteen days after the Director of the Department of Administration, State of Idaho, had issued a letter in which he concluded that there had not been any "advances" noting both that "I do not believe that money was paid prior to services being provided under the state service contracts" and that ENA had "continued to provide services for a significant period of time for which they have received no payment from the state."

5.     The demand of the Attorney General is specifically based upon a ruling by the Idaho Supreme Court in an opinion that issued on March 1, 2014.  In that same opinion, the Idaho Supreme Court issued rulings against ENA that deprived it of its rights to substantive and procedural due process, as will be explained further herein.  Among other holdings, the Court held in the opinion referred to herein as "*Syringa II*" that it could exercise jurisdiction over ENA to declare its contract with the State void despite three years previous in *Syringa I*  having dismissed ENA from this same litigation <u>before there was any allegation in the underlying complaint that the contract that it had been performing for five years was void</u>.

6.     The genesis for the Supreme Court's ruling in *Syringa II* was the Supreme Court's conclusion that ENA's contract to provide services to the State of Idaho was void as a result of unilateral actions taken the State of Idaho and its officials.

7.     ENA sues to recover the value of its services that have been rendered to the State of Idaho, for damages as a result of the violation of its rights to substantive and procedural due process, and for injunctive and equitable relief, forcing the State to pay for services that it ordered under a contract since declared void as a result of unilateral actions taken by the State of Idaho.

## PARTIES

8.     Plaintiff ENA is a Delaware corporation with its principal place of business in Nashville, Tennessee.

9.     ENA Services, LLC is a wholly owned subsidiary of ENA.  For the purposes of this litigation, they shall be referred to jointly as "ENA."

10.     Defendant State of Idaho is one of the fifty United States of America.

11.     Defendant Office of the Idaho Attorney General is the executive branch department of the State of Idaho that has demanded repayment of all sums paid by the State to ENA for the IEN, asserting that such payments for services previously rendered and paid for by the State were "advances."

12.     Defendant Lawrence G. Wasden is a resident of the State of Idaho and is the Attorney General of the State of Idaho.

13.     Defendant Department of Administration is the executive branch department of the State of Idaho that is responsible for the procurement of goods and services for most State agencies and it provided oversight for the IEN.  *See generally* Idaho Code § 67-5745D(3).  The Department of Administration procured telecommunication services from ENA on behalf of the Defendant State Agencies and Districts.

14.     Defendant J. Michael "Mike" Gwartney, is a resident of the State of Idaho and was the Director of the Idaho Department of Administration when the contracts described in this Complaint were awarded.

15.     Defendant Robert L. Geddes, is a resident of the State of Idaho, and the current Director of the Idaho Department of Administration.

16.     Defendant Department of Juvenile Corrections is a governmental agency of the State of Idaho that ordered, used, received, and controlled ENA's services but has failed to pay for some of those services.

17.     Defendant Sharon Harrigfeld is the Director of the Idaho Department of Juvenile Corrections.

18.     The Defendant Districts are local governmental entities and instrumentalities of the State of Idaho that ordered, used, received, and controlled ENA's services but have failed to pay for some of those services.  They include:

- American Falls School District #381;
- Another Choice Virtual Charter School;
- Boundary County School District #101;
- Bruneau-Grand View Joint School District #365;
- Camas County District #121;
- Cascade School District #422;
- Castleford District #417;
- Cottonwood Joint School District #242;
- Emmett Independent School District #221;
- Firth School District #59;
- Fremont County Joint School District #215;
- Highland School District #305;
- Idaho Arts Charter School;
- Idaho Educational Services For The Deaf And The Blind #596;
- Idaho Digital Learning Academy;
- Jerome School District #261;
- Salmon River School District #243;
- Kamiah Joint School District #304;
- Kuna School District #3;

- Melba School District #136;
- West Ada School District #2, formerly known as Meridian School District #2;
- Middleton School District #134;
- Moscow School District #281;
- Mountain Home School District #193;
- Mountain View School District #244;
- Nampa School District #131;
- New Plymouth School District #372;
- Orofino Joint School District #171;
- Payette School District #371;
- Pocatello/ Chubbuck School District #25;
- Ririe School District #252;
- Snake River School District #52;
- Teton County School District #401;
- Twin Falls School District #411;
- West Bonner County School District #83;
- West Jefferson School District #253;
- West Side Joint School District #202; and
- Snake River School Community Library.

## JURISDICTION & VENUE

19.     Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a), because the cause of action arises, in part, out of the Constitution and laws of the United States.

20.     The Court may also exercise supplemental jurisdiction over ENA's state law claims pursuant to 28 U.S.C. §1367(a), because the claims arise out of the same case and controversy as ENA's federal claims.

21.     Venue is appropriate pursuant to 28 U.S.C. § 1391 because all defendants are residents of the State in which the district is located.

## GENERAL ALLEGATIONS

### A.  The Idaho Education Network

22.     In 2008, the Idaho State Legislature determined that: (a) Idaho does not have a statewide coordinated and funded high-bandwidth education network; (b) such a network would

enable required and advanced courses, concurrent enrollment, and teacher training to be deliverable to all public high schools through an efficiently-managed statewide infrastructure; and (c) leveraging demand at the statewide level would provide overall benefits and efficiencies in the procurement of telecommunications services, including high-bandwidth connectivity, internet access, purchases of equipment, federal subsidy program expertise and other related services.  Idaho Code § 67-5745D(1).

23.     In furtherance of these goals, the Legislature authorized the creation of the IEN. *See* Idaho Code §§ 67-5745D and 67-5745E.

24.     IEN was planned to be, and ultimately became, a coordinated, statewide telecommunications distribution system, including two-way interactive video, data, internet access and other telecommunications services for providing distance learning and connecting each instruction of higher education and other locations as necessary to facilitate distance education, teacher training and other related services for distance learning for Idaho public schools.  *See* Idaho Code § 67-5745D(2).

25.     To implement its stated public policies with respect to the IEN, the Legislature mandated that the Department of Administration utilize technology to facilitate comparable access to educational opportunities for all students, be a leader in the use of technology to deliver advanced high school curricula, concurrent college credit, and ongoing teacher training on an equitable basis throughout the state; and leverage Idaho's statewide purchasing power to promote private sector investment in telecommunications infrastructure that will benefit other technology applications such as telemedicine, telecommuting, telegovernment and economic development. *See* Idaho Code § 67-5745E(2).

26.     Idaho Code Section 67-5745E(7), in turn, "created in the state treasury the Idaho education network fund.  Moneys in the fund shall consist of funds received from state appropriations, grants, federal moneys, donations or funds from any other source."  The Legislature further provided that "[m]oneys in the fund may be expended, pursuant to appropriation, for implementation and ongoing costs of the IEN."  *Id.*

27.     Idaho Code §§ 67-5745D and 67-5745E were lawfully passed by the Legislature and duly approved by the Governor.

28.     Therefore, all orders and expenditures by the State to implement the IEN were duly authorized by law.

**B.  State Agency Network Services**

29.     Idaho Code Section 67-5747(1)(a)(i)-(v) "authorized and directed" the Department of Administration to "control and approve the acquisition and installation of all communications equipment and facilities for all departments and institutions of state government, [except institutions of higher education, elected executive officers, the legislative and judicial departments, and public safety and microwave equipment]."

30.     Therefore, all orders and expenditures by the State to procure State agency network services were duly authorized by law.

**C.  Request for Proposals No. 02160**

31.     In December 2008, the Idaho Department of Administration, through the Division of Purchasing, issued Request for Proposals ("RFP") No. 02160 to procure telecommunication services and related services and equipment for both the IEN and state agency networks.

32.     CenturyLink (then known as Qwest) and ENA each submitted bids in response to RFP No. 02160.

33.     In preparing its response to the RFP, ENA entered into a "Teaming Agreement" with Syringa Networks, LLC, an Idaho Limited Liability Company, to provide, among other things the physical connectivity ("circuits") required to connect the schools and state agencies of the IEN, and submitted a response as the "IEN Alliance."

34.     A response to a request for proposal is an offer.

35.     On or about January 20, 2009, Department of Administration issued a Letter of Intent advising bidders of the State of Idaho's intent to award the project to Qwest and ENA, but not the "IEN Alliance."

36.     On January 28, 2009, the Department of Administration issued two identical Statewide Blanket Purchase Orders to Qwest (SBPO 1308) and ENA (SBPO 1309), awarding each an identical contract related to the IEN and state agency projects.  As a consequence, both ENA and Qwest were contractually obligated to provide identical services under their respective SBPOs.

37.     The issuance of an award is an acceptance of the offer of the response to the request for proposal.

38.     A written contract was formed as a result of the State's acceptance of the offers made by ENA and CenturyLink.  The responses to the RFP 02160 were signed by the parties to be charged, ENA and CenturyLink, and the acceptance of the offers were the awards signed by a duly authorized officer of the State of Idaho.

39.     The contract that was formed as a result of these writings could only be amended by a writing signed by both parties.

40.     The State never intended, and its RFP No. 02160 did not contemplate, building two IENs.

41.     As with any issuance of dual awards, the State has the right to determine when to purchase under either of the awards. For example, the State routinely issues multiple awards for the purchase of motor vehicles, obligating all awardees to sell the vehicles offered in response to the request for proposal, and granting the state the right to purchase a needed vehicle from any of the co-awardees.

42.     On February 26, 2009, the State unilaterally issued "amendments" that stated the State's intent as to which services would be ordered from each vendor. Through amendments to the initial purchase orders (designated Amendment No. 1 to SBPO 1308 and Amendment No. 1 to SBPO 1309 (collectively "Amendments No. 1")), the State stated its intent that ENA would be the service provider of record for the IEN, gave ENA responsibility to coordinate delivery of all IEN network services and support, and directed ENA to use CenturyLink as the contractor for IEN technical network services.

43.     The State, through its Department of Administration *unilaterally* determined which IEN services it would acquire from each winning bidder.

44.     The "amendments" did not require the signature of either ENA or Qwest, and were not signed by either party.

45.     The Amendments did not obligate the State to purchase any services.

46.     Although unilaterally designated "amendments" by the state, the amendments could not legally amend the awards or release ENA and CenturyLink from their contractual obligations; rather, they were merely statements of intent as to which services the State would purchase under either contract in order to avoid duplication of purchases.

47.     The Attorney General's assigned representative reviewed, revised, and approved the Amendments No. 1 that provided ENA and CenturyLink guidance as to which services that it would purchase under each contract.

48.     The practical effect of the "amendments" was to express the State's intent to use CenturyLink to provide the services that Syringa had anticipated providing under its Teaming Agreement with ENA.

49.     Mike Gwartney, then the Director of the Department of Administration, later signed a letter to Syringa outlining the State's reasoning:

> After the initial award, *Administration then unilaterally determined how best to divide the work between the two awardees/contractors*. Administration's determination was based upon the individual strengths of each awardees/contractors' proposals.  For example, ENA had expertise in providing E-rate services and providing video teleconferencing operations. Qwest had expertise in providing the technical operations (i.e., the backbone).  Before Amendment 1 to SBPO 01308 and SBPO 01309 were issued, Administration contemplated various ways to divide the responsibilities between Qwest and ENA, including but not limited to dividing the services to be provided by Qwest and ENA regionally. However, the division of responsibilities reflected in the Amendment 1s is a reflection of what Administration believed would best serve the State of Idaho and the schools.

(Letter from M. Gwartney to G. Lowe (July 24, 2009) at 2 (emphasis added)).

50.     This letter was drafted by a representative of the Attorney General's Office.

51.     On a telecommunications circuit-by-circuit basis, the State of Idaho ordered services from ENA and CenturyLink under SBPOs 1308 and 1309 to create the Idaho Education Network.  Each order of services was specific to a circuit required by the IEN, and was placed only after each circuit had been designed, engineered and priced.  Although the state ordered services in a manner consistent with the intentions expressed in the "amendments," ENA and

CenturyLink's obligations to provide services were governed by the SBPOs 1308 and 1309 that issued on January 28, 2009.

52.    As ENA only issued invoices for payment after service was instituted, the state never paid ENA for services before they had been rendered.  Prior to issuing the first invoice for actual service, ENA had expended substantial resources in designing, engineering and installing the circuits necessary to connect a particular school to the internet and the circuits internal to the school to allow those within the school building to enjoy internet access.

53.    Accordingly, the State of Idaho has never paid ENA for services that were not actually rendered.

54.    On December 15, 2009, Syringa filed an action in the Fourth Judicial District of the State of Idaho, docket no CV OC 0923757, styled, "Syringa Networks, LLC, an Idaho Limited Liability Company, Plaintiff, vs. Idaho Department of Administration, J. Michael "Mike" Gwartney, in his personal and official capacity as Direct of and Chief Information Officer of the Idaho Department of Administration, Jack G. ("Greg") Zickau, in his personal and official capacity as Chief Technology Officer and Administrator of the Office of the CIO, ENA Services, LLC, a Division of Education Networks of America, Inc. a Delaware Corporation, Qwest Communications Company, LLC a Delaware Limited Liability Company, Defendants." This is referred to herein as the *"Syringa Complaint.*" Orders entered in this lawsuit resulted in the appeals to the Idaho Supreme Court that resulted in the issuance of opinions of the Idaho Supreme Court on March 29, 2013 ("*Syringa I"*) and ("*Syringa II"*) that issued on March 1, 2016.

55.    As filed on December 15, 2009, the *Syringa Complaint* did not challenge the original awards to ENA and CenturyLink.

56.     As filed on December 15, 2009, the *Syringa Complaint* did not challenge the "amendment" that identified the work that the state intended to order from ENA under SBPO 1309.  In its prayer for relief, Syringa sought a "Declaratory judgment including a finding that the contract and/or purchase orders) between DOA and Qwest are unlawful, and thus void;" and sought "Temporary, preliminary and permanent orders enjoining Qwest's involvement in the IEN implementation."  Syringa never moved to obtain injunctive relief, nor was an injunction awarded, to enjoin the State from ordering services from Qwest.  At no time prior to February 24, 2014, eleven months after ENA had been dismissed from this litigation, had Syringa been allowed to plead that the contract with ENA was void.

57.     Syringa's failure to challenge the award to ENA was intentional, a tactic employed by Syringa to have declared invalid the delegation of work to CenturyLink in order that Syringa might perform that work.

58.     In challenging the award to Qwest, it was never implicit that Syringa was also challenging the award to ENA.

59.     As filed on December 15, 2009, Syringa stated its only claims against ENA in Count Six of its complaint in which it stated:  "115.  Syringa has suffered damages as a result of ENA's breach of the Teaming Agreement to be determined at trial."   In fact, ENA is not mentioned in the "Prayer for Relief" in Syringa's complaint.

60.     On February 29, 2011, after extensive discovery, Patrick H. Owen, District Judge, State of Idaho, in the Syringa litigation, issued a 43 page Memorandum Decision and Order Re: Motions for Summary Judgment in which he ruled that "The Court will grant ENA's motion for summary judgment on Count Six of the Complaint."  Thus, Syringa's only claim against ENA was dismissed on summary judgment.

61.     On appeal, the Idaho Supreme Court in *Syringa I,* affirmed the dismissal of ENA, holding "we affirm the judgment dismissing all counts of the complaint except Count three seeking to set aside the State's contract with Qwest on the ground that it was awarded in violation of the applicable statutes" and "we award costs and attorneys' fees on appeal to ENA."

62.     In that same opinion, the Idaho Supreme Court has previously held that the decision to divide work between ENA and CenturyLink was unilaterally made by the State and solely attributable to it.  *Syringa Networks, LLC v. Idaho Dep't of Admin.,* 305 P.3d 499 (Idaho 2013).  That determination is binding on the State.

63.     In its decision in *Syringa Networks, LLC v. Idaho Dep't of Admin*., 367 P.3d 208, 227 (Idaho 2016), the Idaho Supreme Court further held that "the actions of former director Gwartney corrupted the procurement process."  That determination is binding on the State and former Director Gwartney.

64.     In that same opinion, the Idaho Supreme Court ruled on the issue of whether Syringa had standing to challenge the award of the IEN Purchase Order to Qwest under Count Three of its Complaint.  In Count Three of the *Syringa Complaint*, at paragraph 94, Syringa had pled as follows:

> 94. Syringa seeks a declaratory judgment against the DOA, Division of Purchasing declaring its award of the IEN Purchase Order to Qwest void, null and of no effect pursuant to Idaho Code 67-5725 and/or permanent injunctive relief prohibiting the State and Qwest from performing under the IEN Purchase Order."

65.     The District Court had ruled that Syringa had standing to pursue that claim, and that State of Idaho had challenged that ruling on appeal.  In *Syringa I,* in a section entitled, "a. Syringa has standing," the Idaho Supreme Court reasoned that "Syringa has standing to

challenge the amended contract to *Qwest* because it constituted, in effect, changing the RFP after the bids were opened."  (Emphasis added.)

66.     In *Syringa I*, the merits of the pleadings under Count Three of its Complaint challenging the "IEN Purchase Order to Qwest" had never been briefed.  The issue was on appeal without argument as to the merits of Syringa's allegations because the court on summary judgment had, while finding that the allegations supported a finding of standing, had ruled that Syringa had failed to exhaust its administrative remedies as to that claim.  Accordingly, the District Court had not addressed, and the parties had not framed for appeal on the merits of that claim, the issue of whether Count Three of the *Syringa Lawsuit* stated a claim.  Nor had the parties addressed the facts surrounding that issue on summary judgment.

67.     As of *Syringa I* that issued on March 29, 2013, the only claims against ENA as asserted in Count Six of Syringa's Complaint had been dismissed.  ENA had recovered its attorneys' fees both in the District Court and on appeal, and the only claim left to Syringa, per the Idaho Supreme Court's own ruling, was "Count three seeking to set aside the State's contract with Qwest on the ground that it was awarded in violation of the applicable statutes."

68.     At no point between the awards that issued on January 28, 2009, and March 14, 2014, had anyone sought to declare the contract with ENA void.  At all times, ENA faithfully performed its contractual obligations in accordance with the state's directives to provide specified circuits to its schools.

69.     After remand on "Count three seeking to set aside the State's contract with Qwest," the District Court on March 14, 2014, granted Syringa leave to file a First Amended Complaint in which, for the first time in more than four years of litigation and after the Supreme Court had affirmed the dismissal of Count Six of the Complaint as to ENA, Syringa alleged the

original award to ENA was void.  This is referred to as the "*Syringa 2014 Amended Complaint.*" On March 20, 2014, Syringa moved for summary judgment on that issue, arguing that the Idaho Supreme Court's ruling on its standing to assert that claim was a ruling on the merits of the claim.

70.     Although the Idaho Supreme Court in *Syringa II* has ruled that it was implicit on remand that ENA was a party, ENA was not a party to the litigation when Syringa filed the *Syringa 2014 Amended Complaint.* In fact, Syringa did not serve ENA with either the *Syringa 2014 Amended Complaint* or its March 20, 2014 Motion for Summary Judgment when those pleadings were first filed with the district court.

71.     On the issue of whether ENA was a party, the District Court had ruled as follows:

> The Court entered a judgment of dismissal in favor of ENA on the only claim asserted against ENA in the original complaint, Count six.  This judgment has been affirmed upon appeal.  In the Court's view, ENA is no longer a party because there is no claim against ENA in the original complaint which has not been fully resolved.

72.     Accordingly, the District Court required Syringa to serve ENA with its amended complaint, which it did on July 3, 2014, more than three months after Syringa had filed its motion for summary judgment, almost five months after Syringa had filed its motion to amend its complaint and five years into ENA's performance of its obligations to the State arising as a result of the award of the IEN contract.

73.     On July 17, 2014, ENA filed a Motion to Dismiss Syringa's amended complaint contending that Syringa was precluded from asserting new claims against ENA on the basis that the Supreme Court in *Syringa I* had dismissed all claims against ENA.  Under principles of claim preclusion, ENA argued Syringa was required to bring all of its claims in the *Syringa Lawsuit,* that it had intentionally failed to assert a claim that the State's IEN award to ENA was void and

that, after the Supreme Court had dismissed Count Six, which was the only expressed claim against ENA, that Syringa was barred from re-pleading its lawsuit even if the Supreme Court had identified theories that Syringa had not previously asserted.

74.     The District Court never ruled on the merits of ENA's Motion to Dismiss.

75.     In a decision entered November 10, 2014, the Court granted summary judgment in favor of Syringa, holding that the Department of Administration's award of the IEN work to Qwest and ENA violated state procurement law, and for that reason, that SBPO 1308 and SBPO 1309, as amended by the Amendments No. 1, were void.  In doing so, it expressly relied upon the Supreme Court's ruling on the issue of Syringa's standing to pursue Count Three of the original *Syringa Lawsuit*.  Despite the fact that the Supreme Court had expressly limited its ruling to a finding of standing to pursue a claim, the District Court found that the ruling in *Syringa I* was dispositive, holding that "The Supreme Court found that by dividing the scope of work between Qwest and ENA, DOA violated state procurement law in two respects" and that the Supreme Court's "determination that the amendment violated state law is the law of the case and will be adhered to by this Court."  As a result, a ruling on standing that did not address the merits of the asserted claim, a ruling that was made without anyone briefing the facts relevant and material to the merits of the asserted claim, became the "law of the case" binding ENA in spite of its dismissal from the case affirmed on appeal.

76.     On November 10, 2014, in the same order granting Syringa's Motion for Summary Judgment declaring the entire IEN contract void, including the contract with ENA, the District court ruled that it was "converting" ENA's motion to dismiss on standing into a motion for summary judgment on the merits of the case, and held that it need not address the issues of

claim preclusion prior to ruling against ENA and in favor of Syringa on Syringa's Motion for Summary Judgment.

77.     As a consequence, ENA's contract with the state was declared void despite:

- All claims against ENA having been dismissed by the Idaho Supreme Court in March of 2013;

- ENA having responded to the *Syringa 2014 Amended Complaint*, once it was finally served, with a motion to dismiss on the basis of claims preclusion;

- The District never ruling on ENA's motion to dismiss, and therefore never resolving whether ENA was properly a party to the lawsuit;

- Granting a summary judgment finding ENA's contract with the state was void without having heard ENA on the merits of Syringa's motion for summary judgment; and

- Finding that the Supreme Court's ruling on Syringa's standing to "set aside the State's contract with Qwest on the ground that it was awarded in violation of the applicable statutes" was in effect a ruling on the merits of that claim.

78.     At no time prior to November 10, 2014, was ENA allowed the opportunity to be heard on whether the Supreme Court's ruling on Syringa's standing in *Syringa I* stated a claim, nor was it allowed to present arguments such as:

- The document styled an "amendment" by the state did not satisfy the legal requirements of an amendment to a contract;

- That the amendment was a declaration of the State's intent as to how to avoid the duplication of services under the duplicate contracts that bound ENA and CenturyLink to provide services under their IEN contract.

- That the amendments, while governing how the State would order services under the dual awards, did not change ENA's and CenturyLink's contractual obligations as requested by the RFP and documented by the SBPOs.

79.     The Department of Administration, ENA, and CenturyLink appealed to the Idaho Supreme Court arguing that the Department of Administration's award did not violate state procurement law, and noting numerous procedural violations of the district court in this case.

80.     In a decision entered March 1, 2016, the Idaho Supreme Court upheld the district court's order despite the many clear procedural violations, and affirmed the judgment.  Among other things it ruled:

> "This Court's opinion in *Syringa I* did not dismiss ENA or Qwest from this case, nor was it necessary on remand to amend Count Three to directly challenge ENA's SBPO. Because Count Three alleged that DOA violated a multiple award procurement statute, it was implicit that each contract could be found void due to illegality."

> The district court's contrary conclusion that ENA was no longer a party was in error.  Both ENA and Qwest remained parties on remand because they were necessary parties on the pending Count Three.   Syringa's motion to amend was unnecessary on notice of basic allegations and likely remedies.  Accordingly, the district court had jurisdiction over ENA and Qwest at all relevant times.

81.     The Supreme Court ruled further that ENA had notice and opportunity to be heard on Syringa's Motion for Summary Judgment that had been filed three months prior to it being served on ENA because "ENA should have known that the court would treat its motion as a motion for summary judgment," conflating ENA's motion to dismiss on the basis of claims preclusion with Syringa's motion for summary judgment on the merits of the case.   The Idaho Supreme Court then noted that *Syringa I* was a ruling on standing, noting that "we ultimately concluded that 'Syringa has *alleged*,' rather than demonstrated, an injury sufficient to confer standing.  Further, we did not order entry of judgment in Syringa's favor; we merely held that

"Syringa has standing to challenge the amended contract to Qwest…. (because) we were obligated to construe disputed facts and to draw reasonable inferences in Syringa's favor." Nevertheless, it converted its ruling in *Syringa I* on standing into a ruling on the merits in *Syringa II*.  "We now specifically hold what we said in the context of standing in *Syringa I*…." and affirmed the district court's ruling of summary judgment in favor of Syringa.

82.     Impermissibly ignoring the difference between what is "alleged" for the purposes of asserting standing and what must be proven for the purpose of ruling in the merits, the District Court, concluding that the ruling in *Syringa I* was the law of the case, converted a ruling on standing into a ruling on the merits.

83.     At no time during the six years of litigation regarding the *Syringa Lawsuit* and the *Syringa 2014 Amended Lawsuit* has the State ever pled or argued that its contract with ENA was void.  It did not plead in the alternative that if Syringa was correct in its assertion that SBPO 1308 was void that the award in SBPO 1309 was also void.  After *Syringa I,* it did not amend its pleadings to assert this claim.  It opposed Syringa's motion to amend its complaint to allege that the state's contract with ENA was void. At every phase of every stage of the pleadings and appeals in this litigation, the State has steadfastly defended its contract with ENA, continued to order services under that contract and never asserted that its contract was void or that it could order services without paying for them.

84.     Nevertheless, as a consequence of these rulings against ENA after the claims against ENA had been dismissed by the Idaho Supreme Court in March of 2013, the State of Idaho has failed and refused to pay for services that it ordered, continued to request after *Syringa I*, and for which it admits it owes ENA compensation, and now has asserted that monies that it had previously paid for services that it ordered and used are "advances" that should be repaid to

the State of Idaho.  In now asserting these positions, the State relies upon *Syringa I* in which the Idaho Supreme Court found the actions on which it later relied to declare the contract void were taken unilaterally by the State of Idaho.

85.     ENA seeks to recover just compensation for services accepted by the State of Idaho pursuant to the contracts that the Idaho Supreme Court has declared are void.

86.     One of the instrumentalities of the State of Idaho that received services under the IEN contract without paying for them due to this determination is the Idaho Supreme Court.

**D.  ENA's Service to the State**

87.     From 2009 and into 2015, the State ordered and ENA provided services to the IEN and state agencies under SBPO 1309.

88.     There is no dispute that ENA provided services to the State, Department of Juvenile Corrections, and the Districts and that the State, Department of Juvenile Corrections, and the Districts had ordered.

89.     There is no dispute regarding the quality, suitability, or value of the telecommunications services that ENA provided to the State, Department of Juvenile Corrections, and the Districts.

90.     Indeed, on or about January 19, 2013, the State extended SBPO 1309 through at least January 2019.

91.     In support of these services, ENA made substantial investments, which were to be recouped through the monthly charges for services through the term of the contract.  ENA made those investments in good faith and in reliance upon the state having properly complied with state law in forming a contract with ENA.

92.     There is no dispute that the State, Department of Juvenile Corrections, and the Districts have accepted and used telecommunications services from ENA without compensating ENA for the services.

93.     Moreover, the State has repeatedly acknowledged its obligation to pay for the services provided by ENA.

94.     In specific reliance on the State's acknowledgement of its continuing obligation to pay for all network services ENA provided to the State, Department of Juvenile Corrections, and the Districts, ENA continued to provide those services without interruption notwithstanding the State's failure to pay for them.

95.     The State was aware at the time of making these promises that ENA had made and was continuing to make costly investments to serve the State in reliance on its promises to pay for services provided to the State, Department of Juvenile Corrections, and the Districts.

96.     In addition, Chapter 229 of the 2014 Idaho Session Laws "appropriated to the Department of Administration for the Idaho Education Network Program $4,800,000 from the General Fund to be expended for the period July 1, 2014, through February 28, 2015."

97.     Under this appropriation, the Department of Administration was directed to "make a request each month . . . for an allotment of spending authority that is limited to the monthly amount payable for services that support the Idaho Education Network, as appropriated in Section 1 of this act."

98.     The specific intent of this appropriation was to pay funds due in fiscal year 2015 "to [ENA] . . . for services to be rendered to the [IEN]" if the Universal Service Administrative Company ("USAC") failed to pay ENA for IEN services.  This appropriation constitutes legislative and executive endorsement of the State's IEN commitments.

99.     However, on or about February 18, 2015, the State gave written notice that it would no longer pay for ENA's services:

> As you are aware, SBPO1308 and SBPO1309 have been declared void. Ten days from now, the current legislative funding for the IEN portion of services under SBPO1308 and SBPO1309 will expire and no further appropriation will be made. The Court's decision, combined with the resulting legislative action, necessitates this correspondence.
>
> State of Idaho Standard Contract Terms and Conditions section 26 requires that you be provided not less than ten calendar days' notice that work under the IEN portion of SBPO1308 and SBPO1309 must cease due to legislative non-appropriation. This correspondence will serve as the required notification.
>
> Please note that my staff have been directed to place no future purchase orders for agency work under the void SBPOs.

100.    Nevertheless, at the State's request, ENA continued to provide network services to the Districts and State Agencies to avoid harm to the State, State Agencies, Districts, and the public.  But the State, Department of Administration, Department of Juvenile Corrections, and the Districts have failed to pay ENA for these services.

101.    Further, as indicated above, on August 10, 2016, the Attorney General demanded repayment although the State had never previously taken the position that the IEN contracts were void ab initio, and that it could avoid payment for services that it had ordered and on invoices that it had approved, all for services which ENA had faithfully provided. The Attorney General's position was based on the fact that its contract with ENA was held to be void because of actions that the Idaho Supreme Court found had been taken unilaterally by the State of Idaho when it purportedly "amended" those contracts on February 26, 2009.

102.    Effective July 1, 2016 the Idaho legislature repealed the Idaho Education Network, Idaho Code § 67-5745D, and the Idaho Education Network Program and Resource

Advisory Council, Idaho Code § 67-5745E.  With this repeal, the Idaho Education Network fund was eliminated.

## COUNT I
### §1983—Violations of Rights Secured Under the United States Constitution and Constitution of the State of Idaho

103.    ENA restates here the previous paragraphs of this Complaint.

104.    Under the Fifth Amendment of the United States Constitution, as incorporated to the states by the Fourteenth Amendment, it is unlawful for a person to "be deprived of life, liberty, or property, without due process of law" and for "private property [to] be taken for public use, without just compensation."  U.S. Const. Amend. V.

105.    Under Article I, Sec. 13 of the Constitution of the State of Idaho, no person is to "be deprived of life, liberty or property without due process of law," and under Article I, Sec. 14 of the Constitution of the State of Idaho, "[p]rivate property may be taken for public use, but not until a just compensation . . . shall be paid therefor."

106.    Under the contract clause of the United States Constitution it is unlawful for a State to "pass any…Law impairing the Obligation of Contracts." U.S. Const. Art. I § 10, cl. 1.

107.    Under Article I, Sec. 16 of the Constitution of the State of Idaho no "law impairing the obligation of contracts shall ever be passed."

### Takings Without Just Compensation

108.    ENA entered into a valid contract with the State at the time the State issued the SBPO to ENA. Mike Gwartney acting under color of state law caused the State to unilaterally amend that contract (SBPO).  The SBPOs have since been declared void because "the SBPOs, *when amended by Amendments One to divide the scope of work*, violated State procurement law."  Because the action of amending the SBPOs voided both the SBPOs and Amendments

No.1, the State effectively took benefits of the original SBPOs without just compensation by issuing Amendments No.1.

109.   ENA's telecommunications services constitute private property that cannot be taken without just compensation.

110.   In addition, valid contracts are property subject to taking under the Fifth Amendment.

111.   Contracts between ENA and the State were taken without just compensation.

112.   The economic impact of taking telecommunications services provided by ENA and taking contracts between ENA and the State is considerable.

113.   Defendants' taking of telecommunications services represents an acquisition of resources to facilitate uniquely public functions, namely public education.

114.   State breach of contract claims are not adequate to vindicate ENA's rights as the original SBPOs have since been declared void due to the violation of the State's procurement law, thus frustrating the purpose and excusing performance under the contract.  The State entered into a lawful contract with ENA, unilaterally issued an "amendment" that was found to have made that contract unlawful, and thus void, through issuing Amendments No.1, and never justly compensated ENA for the benefits it was owed under the original lawful contract.

115.   To the extent that there is no other binding agreement between the parties, the terms and existence of a contract for the sale of telecommunications services between ENA and the State are demonstrated by the conduct of the parties, with the request for continued services by the State and the performance of those services by ENA.  As such, an implied contractual relationship existed between ENA and the State.

116.     Specifically, the circumstances here imply a request by the State for the performance of IEN and state agency services by ENA; the circumstances imply a promise by the State to compensate ENA for such performance; and ENA performed the services as requested.

117.     The State has refused to justly compensate ENA for such performance.

### Impairment of Contract

118.     The State of Idaho violated the contracts clauses in regards to ENA's contract with the State and has foreclosed the imposition of an adequate remedy for impairment of ENA's contract with the State.

119.     Mike Gwartney acting under color of state law caused the State to unilaterally amend that contract (SBPO).  As indicated above, the SBPOs have since been declared void. Amending the SBPOs voided both the SBPOs and Amendments No.1, which abrogated the State's contractual obligation, unconstitutionally impairing ENA's contract with the State.

120.     An express contractual relationship existed between ENA and the State of Idaho after the original SBPOs were submitted but before Amendments No.1 were issued. Though the contracts have now been declared void based on state procurement law, they would not have been void had Amendments No.1 never been issued, and thus a valid contractual relationship once existed.

121.     The State's action unilaterally "amending" ENA's contract caused ENA's contract to be declared void by the Idaho Supreme Court.  This declaration  has resulted in the Idaho Attorney General demanding repayment of all amounts paid to ENA pursuant to I.C.§67-5725. As the State is applying I.C. §67-5725, said statutory provision is unconstitutional as an impairment of ENA's contract rights.

45950-001 / 881130

122.    The impairment was not reasonable and necessary to serve an important public purpose. To the contrary, issuance of Amendments No.1 eventually resulted in failure of the IEN and millions of dollars wasted to the detriment of the school districts and ultimately the public.

123.    Specifically, the circumstances here imply a request by the State for the performance of IEN and state agency services by ENA; the circumstances imply a promise by the State to compensate ENA for such performance; and ENA performed the services as requested.

124.    The State of Idaho refused to pay money previously appropriated for purposes of the IEN.

125.    The State of Idaho finally eliminated the IEN by repealing Idaho Code §67-5745D and §67-5745E, thus further impairing the contractual relationship between ENA and the State, and between ENA and CenturyLink.

126.    Non-appropriation substantially impaired the contractual relationships between CenturyLink and the State of Idaho and ENA.  The subsequent elimination of the IEN prevented ENA from ever receiving the full benefit it was owed under either contract.

127.    These impairments are substantial. The impairments were not reasonable and necessary to serve an important public purpose.  The acts of both non-appropriation and repealing the IEN were done in the interest of the State under the color of state law, and at the expense of ENA and the public.

128.    The acts amounted to an impairment of ENA's contract in violation of the Contracts Clause of the United States Constitution and Article I, § 16 of the Constitution of the State of Idaho.

129.    ENA has no adequate remedy under state law.

**Deprivation of Property Without Due Process of Law**

130.    ENA had a reasonable expectation of realizing the benefit of its property rights in its contract.

131.    In 2009, Syringa sued ENA on a single theory, that ENA had violated a "Teaming Agreement" with Syringa.

132.    In Count Three of its original Complaint, Syringa sued on the basis that, "the IEN Purchase Order to Qwest [was] void, null and of no effect pursuant to Idaho Code 67-5725 and/or [seeking] permanent injunctive relief prohibiting the State and Qwest from performing under the IEN Purchase Order."

133.    In expressly suing to declare the "Purchase Order to Qwest" null and void, it is not implied or implicit that Syringa was suing to have declared SBPO 1309 awarding a contract to ENA void.

134.    When the Idaho Supreme Court affirmed the dismissal of ENA at a time when Syringa's complaint asserted claims solely as to work delegated by the State to Qwest, ENA was no longer a party to that litigation.

135.    After the Supreme Court affirmed the dismissal of ENA in March of 2013, principles of claims preclusion preclude Syringa asserting new claims against ENA.

136.    After the Idaho Supreme Court affirmed the dismissal of ENA in March of 2013, the Supreme Court was barred from converting language "said in the context of standing in *Syringa I*" into a ruling on the merits in *Syringa II*.  If that language had that effect, it had it in *Syringa I* and the court's failure to rule in March 2013 bars it from converting a finding on standing into a ruling on the merits in March of 2016.

137.    After ENA was dismissed in *Syringa I,* ENA could no longer be sued on any theory that could have been asserted by Syringa in its original complaint.

138.    By allowing Syringa to amend its complaint and issue service to ENA after Syringa I, the State of Idaho has denied ENA due process of law.

139.    In converting ENA's motion to dismiss on the basis of claims preclusion, which would have determined whether ENA was properly a party to the litigation, to a motion for summary judgment, and then granting Syringa's motion for summary judgment finding that both the ENA and Qwest contracts with the State were void, ENA has been denied notice and opportunity to be heard.

140.    Throughout *Syringa I* and *Syringa II*, the State of Idaho continuously and unreservedly defended its contracts.  Even when the Idaho Supreme Court raised a concern about the procurement process, the State of Idaho continued to defend the contract and to request services, and the continuation of services, by ENA under its contract.

141.    In now asserting for the first time that its contract with ENA was void ab initio, The State is taking a position, asserting an argument and pursuing a claim that it never asserted, argued or briefed in the course of six years of litigation with Syringa.

142.    The State is precluded from asserting that its contract with ENA is void ab initio, or that it can avoid payment for services that it ordered on the basis that its unilateral action were declared to have voided the contract five years into the performance of that contract.

143.    The State of Idaho has taken intentional steps to deprive ENA of its property rights in its contract with the State.

144.    The State of Idaho, acting through its Director of Administration, Executive Branch, Legislative Branch and Attorney General, all acting under the color of state law, have

acknowledged that their conflicting acts have deprived, and are depriving, ENA of its property rights, including specifically its right to payment for the services requested by and rendered to the State of Idaho under its contract.

145.    The demand of the Attorney General is based upon a ruling of the Idaho Supreme Court.

146.    The ruling of the Idaho Supreme Court against ENA was based upon faulty and inadequate procedures, applications of the Idaho Rules of Civil Procedure and substantive law.

147.    The ruling of the Supreme Court was based upon civil procedures and interpretations of established law that violate the fundamental "rule of law" and violate the Fifth and Fourteenth Amendments to the Constitution of the United States of America, and Article I, Sec. 13 of the Constitution of the State of Idaho.

148.    After the ruling by the Idaho Supreme Court in *Syringa II*, ENA has no adequate state law remedies.

**Actions and/or Omissions Under Color of State Law**

149.    The acts and/or omissions of the State of Idaho, Mike Gwartney, former director and Robert Geddes, current director of the Department of Administration, State Agencies, the Districts, and the Idaho Attorney General, all acting under color of state law, constitute: the taking of ENA's private property without just compensation in violation of 42 U.S.C. §1983, the Fifth Amendment, incorporated by the Fourteenth Amendment, of the United States Constitution, and Art. I, §14 of the Constitution of the State of Idaho, violation of the contracts clause in violation of 42 U.S.C. § 1983, Art. I, §10 of the United States Constitution, and Art. I, § 16 of the Constitution of the State of Idaho; and a violation of ENA's right to due process of law in violation of 42 U.S.C. § 1983, the Fifth Amendment, incorporated by the Fourteenth

Amendment, of the United States Constitution, and Art. I, §13 of the Constitution of the State of Idaho.

150.    ENA has suffered damages as a consequent, proximate and foreseeable, result of these acts and/or omissions, and is entitled to recover just compensation for the benefits it was entitled to under the original SBPOs with the State and the Qwest Total Advantage Agreement with ENA, presently estimated at no less than $18,500,000, plus interest, and all reasonable costs of litigation, including attorney's fees and court costs.  42 U.S.C. §1988.

**COUNT II**
**Theft of Telecommunications Services**

151.    ENA restates here the previous paragraphs of this Complaint.

152.    Under the laws of the State of Idaho, "[i]t is theft of telecommunications services to use, receive, or control telecommunications services without paying the pecuniary consideration regularly charged by the supplier of the telecommunication services used, received or controlled."  Idaho Code § 18-6713(4).

153.    "'Telecommunication service' means a service which, in exchange for a pecuniary consideration, provides or offers to provide transmission of messages, signals, facsimiles, video images or other communication between persons who are physically separated from each other by means of telephone, telegraph, cable, wire, or the projection of energy without physical connection."  Idaho Code § 18-6713(1)(i).

154.    ENA has provided telecommunication services to State Agencies and the Districts in Idaho as defined by Idaho Code § 18-6713(1)(i).

155.    The Defendant State Agencies and Districts have used, received, and controlled ENA's telecommunication services without paying the pecuniary consideration regularly charged by ENA for the telecommunication services that they used, received and controlled.

156.    "Actual knowledge by the supplier of the telecommunication services that a person is or has been using, receiving or controlling the services shall not be a defense to the crime of theft of telecommunication services."  Idaho Code § 18-6713(4)(a).

157.    "The supplier of telecommunication services which is directly affected by the commission of [theft of telecommunications services] shall, regardless of whether there was a criminal conviction, have a civil cause of action against the person who commits any of the prohibited acts."  Idaho Code § 18-6713(9)

158.    The term "person," as used in Chapter 67 of the Idaho Penal Code, includes "any employee or agent of the state or political subdivision thereof and any individual, partnership, association, joint stock company, trust, cooperative, or corporation."  Idaho Code § 18-6701(5).

159.    ENA is entitled to recover its actual damages, presently estimated at over $5,000,000, plus interest, and all reasonable costs of litigation, including attorney's fees and court costs.  Idaho Code § 18-6713(9).

## COUNT III
## Breach of Implied Contract

160.    ENA restates here the previous paragraphs of this Complaint.

161.    To the extent that there is no other binding agreement between the parties, the terms and existence of a contract for the sale of telecommunications services between ENA and the State are demonstrated by the conduct of the parties, with the request for continued services by the State and the performance of those services by ENA.

162.    Specifically, the circumstances here imply a request by the State for the performance of IEN and state agency services by ENA; the circumstances imply a promise by the State to compensate ENA for such performance; and ENA performed the services as requested.

163.    This implied-in-fact contract is given the same legal effect as any other contract.

164.    Thus, there is a contract between ENA and the State for telecommunications services.

165.    ENA has performed its obligations under that contract.

166.    The State has breached the contract by failing to pay for services rendered.

167.    ENA has suffered damages from this breach, presently estimated at no less than $4,000,000, plus interest.

## COUNT IV
## Promissory Estoppel

168.    ENA restates here the previous paragraphs of this Complaint.

169.    The State, through its agents, made promises to ENA that it would receive payment for all services provided to the State and the State knew that if ENA did not receive said payments, it would cause a substantial loss to ENA.

170.    ENA reasonably and justifiably relied on the State's promises to its substantial economic detriment by providing essential services to the State, as well as by making substantial investments in rural infrastructure to serve the State.

171.    The substantial loss to ENA was caused by ENA's acting in reliance on the State's promises.

172.    ENA has suffered damages from its reliance on the State.

## COUNT V
## Unjust Enrichment

173.    ENA restates here the previous paragraphs of this Complaint.

174.    To the extent that there is no binding agreement between the parties, the State and the school districts within it have been unjustly enriched by ENA under circumstances that

require the State, State Agencies, and the Districts to compensate ENA for the unjust gain to the State, its agencies, and the Districts.

175.    ENA has provided essential and valuable services to the State, its agencies, and the Districts, conferring substantial benefits upon the State, its agencies, the Districts, and the State's citizens.

176.    ENA has also made substantial investments in rural infrastructure to serve the State, conferring substantial benefits upon the State, its agencies, the Districts, and the State's citizens.

177.    The State, its agencies, and Districts requested these benefits, accepted them, and enjoyed their use.

178.    Under the circumstances, it would be unjust for the State and the Districts to retain the benefits without compensating ENA for their full value.

## COUNT VI
## Quantum Meruit

179.    ENA restates here the previous paragraphs of this Complaint.

180.    In spite of the fact that the agreement between the parties has been declared void, ENA has conferred benefits on the State of Idaho, its agencies, and the Districts within it, in the form of goods and/or services.

181.    The State, its agencies, and the Districts have accepted and retained those benefits.

182.    ENA is entitled to recover from the State, its agencies, and/or the Districts the value of those benefits, presently estimated at no less than $4,000,000, plus interest, under an implied-in-fact contract under ordinary principles of equity and justice.

## COUNT VII
## Injunctive Relief

183.    ENA restates here the previous paragraphs of this Complaint.

184.    The State of Idaho has deprived ENA of its rights to substantive and procedural due process of law by declaring ENA's contract with the State void ab initio five years into the performance of that contract.

185.    The Attorney General by letter dated August 10, 2016, has now demanded repayment of all sums paid by the State to ENA for the IEN, asserting that I.C. § 67-5725 imposes a legal duty to seek recovery of these payments, insisting that the payments have been interpreted as "advances" under the statute.

186.    These payments received by ENA were not advances because they were not payments paid prior to services being provided under the contract.

187.    The Acting Director of the Department of Administration has admitted that these payments are not advances.

188.    There is a real, actual, and substantial controversy between the parties regarding the interpretation of "advances" under Idaho law and I.C. § 67-5725.

189.    The State of Idaho's action of seeking repayment constitutes an illegal taking.

190.    State breach of contract claims are not adequate to vindicate ENA's rights due to the State's violation of the State's procurement law.

191.    ENA seeks injunctive relief prohibiting the State of Idaho from attempting to illegally seek repayment.

192.    Unless injunctive relief is ordered, ENA's rights to due process will be violated and it will suffer irreparable injury.  Injunctive relief may prevent the State from causing injury to ENA.

193.    ENA has a high probability of success on the merits of its claim since the State has admitted the payments to ENA were paid for services provided by ENA under the contract and the State never took a position that the IEN contracts were void ab initio prior to the August 10, 2016 Demand.  The actions seeking to recover these payments are serious issues concerning ENA's due process rights.  The importance of the protection of ENA's due process rights outweighs any hardship that the State may suffer from affording ENA due process.

**COUNT VII**
**28 U.S.C. § 2201 Declaratory Judgment**

194.    ENA restates here the previous paragraphs of this Complaint.

195.    As stated above, real, actual, and substantial controversy exists between the parties in that the defendants have denied ENA's rights as described herein, and Defendant Attorney General has sought to exercise authority not vested in him in a manner that further deprives ENA of its constitutional rights.  Moreover, the demand by the Attorney General puts ENA in a dilemma that it was the purpose of the Declaratory Judgment Act to ameliorate in that compliance with the unlawful demand made on ENA will be costly and non-compliance may also be costly.  The validity of this controversy is therefore ripe for review.

196.    ENA seeks a declaration that I.C. § 67-5725 does not require ENA to repay all amounts paid to it under the IEN and that said statute, if applied as the Attorney General demands, is unconstitutional under the Contracts, due process, and takings clauses of the United States Constitution and Constitution of the State of Idaho.

**ATTORNEYS' FEES AND COSTS**

For the reasons set forth in this Complaint, ENA has incurred and will continue to incur attorneys' fees and costs in connection with this lawsuit.  Pursuant to Idaho Code §§ 12- 101, 12-

117, 12-120(3), 12-121, 18-6713, and 42 U.S.C. § 1988, ENA is entitled to its reasonable attorneys' fees and costs incurred in the prosecution of this matter.

## DEMAND FOR JURY TRIAL

ENA demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, ENA requests the following relief:

1. Judgment for damages against the Defendants in favor of ENA, the exact amount of which is unknown and which will be proven at trial;

2. A permanent injunction enjoining the State from further violations of ENA's Constitutional rights including, but not limited, enjoining the State from seeking to recover payments previously made for services rendered, and enjoining the State from denying its obligation to pay for services that it expressly ordered, received and approved for payment from ENA;

3. A declaratory judgment that I.C. § 67-5725 does not require ENA to repay all amounts paid to it under the IEN and that said statute, if applied as the Attorney General demands, is unconstitutional under the Contracts, due process, and takings clauses of the United States Constitution and Constitution of the State of Idaho;

4. An award of costs and attorneys' fees to ENA in connection with this litigation as allowed by law; and

5. Such other and further relief as the Court deems just and equitable.

DATED this  19<u>th</u>  day of August, 2016.

               GREENER BURKE SHOEMAKER OBERRECHT P.A.


               By  */s/ Phillip S. Oberrecht*
                    Phillip S. Oberrecht
               Attorneys for Education Networks of America, Inc.