UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDUCATION NETWORKS OF AMERICA, INC., a Delaware Corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>LAWRENCE G. WASDEN, Attorney General for the State of Idaho; J. MICHAEL GWARTNEY, in his official capacity and personal capacity as the former Director and Chief Information Officer of the Idaho Department of Administration; AMERICAN FALLS SCHOOL DISTRICT #381; ANOTHER CHOICE VIRTUAL CHARTER SCHOOL; BOUNDARY COUNTY SCHOOL DISTRICT #101; BRUNEAU-GRAND VIEW JOINT SCHOOL DISTRICT #365; CAMAS COUNTY DISTRICT #121; CASCADE SCHOOL DISTRICT #422; CASTLEFORD DISTRICT #417; COTTONWOOD JOINT SCHOOL DISTRICT #242; EMMETT INDEPENDENT SCHOOL DISTRICT #221; FIRTH SCHOOL DISTRICT #59; FREMONT COUNTY JOINT SCHOOL DISTRICT #215; HIGHLAND SCHOOL DISTRICT #305; IDAHO ARTS CHARTER SCHOOL; IDAHO EDUCATIONAL SERVICES FOR THE DEAF AND THE BLIND #596; IDAHO DIGITAL LEARNING ACADEMY; JEROME SCHOOL DISTRICT #261; SALMON RIVER | Case No. 1:16-cv-00379-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

SCHOOL DISTRICT #243; KAMIAH
JOINT SCHOOL DISTRICT #304;
KUNA SCHOOL DISTRICT #3;
MELBA SCHOOL DISTRICT #136;
MERIDIAN TECHNICAL CHARTER
HIGH SCHOOL; MIDDLETON
SCHOOL DISTRICT #134; MOSCOW
SCHOOL DISTRICT #281;
MOUNTAIN HOME SCHOOL
DISTRICT #193; MOUNTAIN VIEW
SCHOOL DISTRICT #244; NAMPA
SCHOOL DISTRICT #131; NEW
PLYMOUTH SCHOOL DISTRICT
#372; OROFINO JOINT SCHOOL
DISTRICT #171; PAYETTE SCHOOL
DISTRICT #371; POCATELLO/
CHUBBUCK SCHOOL DISTRICT #25;
RIRIE SCHOOL DISTRICT #252;
SNAKE RIVER SCHOOL DISTRICT
#52; TETON COUNTY SCHOOL
DISTRICT #401; TWIN FALLS
SCHOOL DISTRICT #411; WEST
BONNER COUNTY SCHOOL
DISTRICT #83; WEST JEFFERSON
SCHOOL DISTRICT #253; WEST SIDE
JOINT SCHOOL DISTRICT #202;
SNAKE RIVER SCHOOL
COMMUNITY LIBRARY,

        Defendants.

## INTRODUCTION

Pending before the Court is a Motion to Dismiss filed by Defendants J. Michael

Gwartney and Lawrence G. Wasen. (Dkt. 21). The Court heard oral argument on January

11, 2017 and took the motion under advisement. For the reasons explained below, the

Court will GRANT the motion.

# BACKGROUND

This action stems from the State of Idaho's efforts to establish the Idaho Education Network (IEN), a high-bandwidth telecommunications distribution system for public schools in the state. Plaintiff ENA Services, LLC filed this action to recover compensation for services it rendered under the IEN and to enjoin the state from attempting to recover state funds ENA has already received for such work.

The Idaho Legislature authorized the creation of the IEN in 2008 to facilitate distance education, teacher training, and other related services for Idaho public schools. *First Amended Compl.* ¶ 29, Dkt. 14. In December 2008, the Idaho Department of Administration (DOA), the agency responsible for administering state contracts, issued a Request for Proposals (RFP) for the first phase of the IEN. *Id.* ¶ 24. Defendant J. Michael Gwartney was the Director of the Department of Administration at that time. *Id.* ¶ 11. ENA and Qwest Communications Company both submitted bids to provide telecommunication services for the project. *Id.* ¶ 25. In January 2009, the Department of Administration awarded identical purchase order contracts—known as Statewide Blanket Purchase Orders (SBPOs)—to both ENA and Qwest. *Id.* ¶ 29. One month later, the Department of Administration unilaterally amended the SBPOs to allocate certain portions of the IEN work exclusively to ENA and other portions exclusively to Qwest. *Id.* ¶¶ 29, 37. The providers then designed, engineered, and priced the circuits for the IEN, and the State ordered services from the providers under the SBPOs. *Id.* ¶¶ 46, 87.

In December 2009, the State, ENA, and Qwest became involved as co-defendants

in state-court litigation filed by Syringa Networks, LLC, in which Syringa challenged the

bidding process for the IEN. *Id.* ¶¶ 50–84. While this litigation was pending, the State

continued to order and accept services from ENA. *Id.* ¶¶ 64, 84. In a decision entered on

November 10, 2014, the Idaho district court granted summary judgment for Syringa,

holding that the Department of Administration's unilateral contract amendments violated

state procurement laws and for that reason, the SBPOs were void *ab initio*. *Id.* ¶ 73. It

entered a final judgement to that effect in February 2015. *Def.'s Br.* at 4. At that point,

the Idaho legislature withdrew its appropriation of funds for the IEN and the State ceased

all orders under the project. *Id.* On March 1, 2016, the Idaho Supreme Court upheld the

district court's determination that tainted contracts were void *ab initio*. *First Amended

Compl.* ¶¶ 79–83; *Syringa Networks, LLC v. Idaho Dep't of Admin. ("Syringa II")*, 367

P.3d 208, 223 (Idaho 2016).

Following the Idaho Supreme Court's *Syringa II* decision, the Idaho Attorney

General Lawrence G. Wasden demanded repayment of all sums "advanced" to ENA for

IEN services, pursuant to Idaho Code § 67-9213 (formerly § 67-5725).[1] ENA brings this

lawsuit to enjoin Wasden from seeking repayment and to recover additional

---

[1] Idaho Code § 67-9213 provides: "(1) All contracts made in violation of the provisions of this chapter shall be void. Any sum of money advanced by the state in consideration of a void contract shall be repaid forthwith. (2) In the event of a refusal or delay when repayment is demanded by the proper officer of the state of Idaho, under whose authority such contract shall have been made or entered into, every person so refusing or delaying, together with that person's surety or sureties, shall be prosecuted at law for the recovery of such sum of money so advanced." The relevant language in Idaho Code § 67-9213 is identical to language contained in former Idaho Code § 67-5725, which the Idaho legislature adopted in 1975, before the IEN contracts were issued. *See* 1975 Idaho Sess. Laws, ch. 254, § 2, p. 686.

compensation from designated school districts and libraries throughout the state of Idaho for services rendered by ENA to said Defendants. Additionally, ENA asserts constitutional claims against Wasden and Gwartney, pursuant to 42 U.S.C. § 1983, for a deprivation of rights secured by the Contracts Clause, Due Process Clause, and Takings Clause of the U.S. Constitution.

## LEGAL STANDARD

### 1. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility

of 'entitlement to relief.'" *Id.* at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id.* Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (issued 2 months after Iqbal). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court

may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866, n.1 (9th Cir. 2004). The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

### 2. Rule 12(b)(1) Standard

Although styled as a motion to dismiss pursuant to Rule 12(b)(6), Defendants' motion also argues that the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction. For purposes of that jurisdictional challenge, the Court will consider the motion as one brought pursuant to Federal Rule of Civil Procedure 12(b)(1).

When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual . . . ."). In the former, the challenger asserts that the allegations contained in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

invoke federal jurisdiction." *Id.* In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations, and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.*

## ANALYSIS

### 1. *Rooker-Feldman* Doctrine Does Not Apply

Before addressing the merits of Plaintiff's First Amended Complaint, the Court must determine whether it has proper subject matter jurisdiction. The *Rooker–Feldman* doctrine provides that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)). Review of such state court decisions may be conducted only by the United States Supreme Court. *Id.*; *see also* 28 U.S.C. § 1257.

"The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (internal citation omitted). A forbidden de facto appeal is defined as a case "brought by [a] state-court loser[] complaining of injuries caused by [a] state-court judgment[] rendered before the district court proceedings commenced and inviting district court review and rejection of [that] judgment[]." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284

(2005). To the extent that another part of the federal plaintiff's suit is "inextricably intertwined" with the forbidden de facto appeal, that issue is also barred. *Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003); *see also Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004) (clarifying that the "inextricably intertwined" test comes into play only after the Court determines that some issue in the complaint seeks an impermissible appeal of the state court judgment).

Plaintiff's lawsuit does not fall within the narrow class of cases to which *Rooker-Feldman* applies. First, although the Complaint refers to perceived errors by the Idaho courts, it does not seek to overturn or challenge those decisions. Nor does ENA dispute that the amended contract was void. Second, the legal wrong alleged is not an erroneous decision by the state court, but rather the independent constitutional violations of state actors. Specifically, Plaintiff challenges: (1) Attorney General Wasden's demands for repayment from ENA pursuant to Idaho Code § 67-9213; and (2) Gwartney's unilateral amendments, which converted ENA's agreement with the state into a void contract. Even if the state court orders were valid, these actions may amount to independent constitutional violations.

Defendants argue that ENA attempts to circumvent the jurisdictional bar by seeking to enjoin enforcement of the *Syringa II* judgment, thereby obtaining indirect federal review of the state case. *Def.'s Br.* at 4. However, the Idaho Supreme Court did not, as Defendants assert, "direct[] the State . . . to recover the substantial funds . . . advanced by the state to the vendors under the void contracts." *Id.* The Court expressly

declined to interpret the meaning of "advances" as used by Idaho Code § 67-5725 (since re-codified at § 67-9213) or to issue such an order:

> Section 67-5725 does impose an obligation on the proper officer "of the state of Idaho" to seek repayment of money advanced under the void SBPOs, if repayment is refused or delayed. *But it imposes no obligation on the district court to preemptively order that DOA comply with this obligation.*

*Syringa Networks, LLC v. Idaho Dep't of Admin.*, 367 P.3d 208, 224–25 (2016) (emphasis added). For these reasons, the Court concludes that the *Rooker-Feldman* doctrine does not deprive the Court of jurisdiction to consider ENA's claims.

## 2.        Plaintiff Fails to State a Valid § 1983 Claim

We next consider whether the Complaint sufficiently alleges a claim under 42 U.S.C. § 1983. Section 1983 provides a basis for relief where the challenged action (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988) (internal citations omitted). Defendants' Motion challenges the second element: whether Gwartney and Wasden in fact violated any of ENA's constitutional rights under the Takings Clause, Due Process Clause, and Contracts Clause.

### A.        Takings Clause Claim

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that "private property" shall not "be taken for public use, without just compensation." U. S. Const., amend. V; *Chicago, B. Q. R. Co.* v. *Chicago,* 166 U.S. 226, 239 (1897). The threshold inquiry in any takings case is whether the claimant has asserted a cognizable property interest. *Bd. of Regents of State*

*Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Property interests . . . are not created by the Constitution. Rather they are . . . defined by existing rules or understandings that stem from an independent source such as state law." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (quoting *Board of Regents of State Colleges* v. *Roth,* 408 U.S. 564, 577 (1972). "[F]ederal constitutional law [then] determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 9 (1978) (quoting *Roth*, 408 U.S. at 577; *Perry v. Sindermann*, 408 U.S. 593, 602 (1972).

ENA alleges that Gwartney's unilateral contract amendments and Attorney General Wasden's demands of repayment resulted in an unconstitutional taking of ENA's property. Defendants seek dismissal of this claim because ENA cannot establish a protectable interest under the Takings Clause. ENA's takings claims thus hinge on the following: (1) whether ENA has a right to compensation for work performed pursuant to a void state contract;[2] (2) whether ENA has a right to retain sums already paid by the

---

[2] ENA concedes that the Idaho Supreme Court has declared ENA's contract with the state void *ab initio*, excluding the possibility of a breach-of-contract theory. Plaintiff also asserts, in a footnote, a property right in the state appropriation. *Pl.'s Br.* at 14, n.6. As a general rule, legislative bodies retain authority to control the fate of appropriations to serve the changing needs of the government. *See Washington, D.C. Ass'n of Realtors, Inc. v. District of Columbia*, 44 A.3d 299, 305 & n. 28 (D.C. 2012) (collecting cases). The cases cited by Plaintiff to the contrary are distinguishable, as they all deal with a narrow factual circumstance: a special trust held by the state, funded through industry contributions, and statutorily mandated to be used to pay for future assessments against those contributors. *See Hosp. & Health Sys. Ass'n of Pa. v. Commonwealth*, 77 A.3d 587, 606 (Pa. 2013) (health care plaintiffs had a due process interest in the MCARE Fund, which was funded through an assessment against health care providers and used to satisfy insurance claims against the providers); *Alliance of American Insurers v. Chu*, 77 N.Y.2d 573, 587 (Ct. App. 1991) (holding that insurance companies had a due process interest in (Continued)

state; and (3) whether such interests are cognizable for Takings Clause purposes.

### (1) Right to Compensation for Work Performed Pursuant to a Void Government Contract

The first property right asserted by ENA is the right to compensation for services rendered to the state. While not framed as such, this claim sounds in theories of quasi contract, contract implied in law, unjust enrichment, or similar equitable doctrines.

Under Idaho law, a claim for unjust enrichment "occurs where a defendant receives a benefit which would be inequitable to retain without compensating the plaintiff." *Vanderford Co. v. Knudson*, 165 P.3d 261, 271 (Idaho 2007) (internal citation omitted). "A person confers a benefit upon another if he or she . . . performs services beneficial to or at the request of the other, satisfies the debt of the other, or in any other way adds to the other's advantage." 42 C.J.S. Implied Contracts § 9 (2013). The doctrine is often applied in the context of a contract held void or unenforceable after one or more of the parties has already performed. In such instances, the illegal agreement is not enforced as a contract. Instead, the law implies an obligation to pay for the reasonable value of the actual benefit conferred. *See Barry v. Pac. W. Const., Inc.*, 103 P.3d 440, 447 (Idaho 2004).

---

the statutorily created Property and Liability Insurance Security Fund, funded through insurer contributions and used to satisfy claims in the event of an insurer's insolvency); *Employers Ins. of Wausau v. Mitchell*, 337 N.W.2d 857 (Wis. Ct. App. 1983) (same). Furthermore, *Ferris v. United States*, 27 Ct. Cl. 542 (U.S. 1892) merely established the commonsense principle that the exhaustion of appropriation funds does not extinguish a contractor's rights under a government contract. The case is distinguishable in that it dealt with a valid government contract and did not hold that such a right would support a constitutional claim.

There is a conflict of authority regarding the applicability of unjust enrichment

principles to government contracts. It has been said that quasi-contract theories "which

are routinely applied in private contractual contexts are ill-suited to a public-contract-

rights analysis." *Retired Adjunct Professors of the State of R.I. v. Almond*, 690 A.2d

1342, 1346 (R.I. 1997). The majority of courts have taken the view that a state or

municipality ordinarily cannot be held liable under quasi-contract theories for goods or

services received under a contract deemed void for noncompliance with bidding

requirements. 33 A.L.R.3d 1164 (Originally published in 1970). This rule is advanced on

grounds of public policy. The purpose of public procurement statutes—to protect

taxpayers from unwise, wasteful, or corrupt public administration—would be defeated if

contractors were allowed to recover for services rendered under forbidden contracts. *Id.*

Furthermore, allowing recovery "would place [a] temptation before contractors" to enter

into contracts of doubtful validity without fear of sustaining any loss. *Id.* (citing *Horrabin*

*Paving Co. v. Creston*, 262 NW 480 (1935)).

Idaho appears to follow this majority approach. In *J & J Contractors/O.T. Davis*

*Constr. v. State*, 797 P.2d 1383 (1990), the Idaho Supreme Court held that a vendor may

not recover from the state under a theory of unjust enrichment for services rendered

pursuant to a void contract. In commenting on the rationale of the rule, the Court stated:

> It was manifestly the purpose of the legislature, in enacting the [statutes], to
> procure competitive bidding for contracts for making public improvements . . . and
> thereby to safeguard public funds and prevent favoritism, fraud and extravagance
> in their expenditure. This evidences that there is a strong public policy against the
> enforcement of governmental contracts that violate competitive bidding laws. To
> allow recovery in quantum meruit for work performed pursuant to governmental

contracts that violate competitive bidding statutes would emasculate this public policy. We can fulfill the purpose of these statutes only by applying the same rule to contracts that violate competitive bidding statutes that we apply in the case of other void governmental contracts.

*Id.* at 1384 (internal quotations and citations omitted).

ENA attempts to distinguish the present circumstances on the basis that it was an innocent party. A minority of states do permit recovery for contracts made and performed in good faith by a government contractor.[3] 33 A.L.R.3d 1164. Where there is no evidence of wrongdoing or knowledge of the contract's illegality by the vendor, these jurisdictions have concluded that it is only fair for the Government to pay for services voluntarily accepted. *Id.* This approach serves the public's interest in deterring intentional wrongdoing without unduly penalizing an innocent party for the failures of state procurement officers. *Id.* However, Idaho does not appear to be among the states that consider the equities surrounding a particular vendor before granting or denying recovery. *See J & J Contractors*, 797 P.2d 1383 (denying compensation under unjust enrichment principles absent any apparent bad faith, fraud, or collusion on the part of the contractor and where the contract was declared void due to the unilateral actions of the state administrators). The lack of bad faith, then, is of no assistance to ENA.

---

[3] The U.S. Court of Appeals for the Federal Circuit—the court vested with jurisdiction to hear appeals from the United States Court of Federal Claims—permits *quantum meruit* claims to proceed against the United States on this theory. *See United States v. Amdahl Corp.*, 786 F.2d 387, 395 (Fed. Cir. 1986) ("[I]n many circumstances it would violate good conscience to impose upon the contractor all economic loss from having entered an illegal contract. . . . [W]here conforming goods or services have been delivered by a contractor and accepted by the government, the contractor has been held entitled to payment, either on a *quantum valebant* or *quantum meruit* basis if the contract is void *ab initio* . . . .").

As a final matter, the Court recognizes the principle that states do not have unlimited power to "disavow[] traditional property interests long recognized under state law." *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 439 (1982). "State law may affirmatively create constitutionally protected 'new property' interests. . . . [but may not] . . . roll back or eliminate traditional 'old property' rights." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1200 (9th Cir. 1998). "Were the rule otherwise, States could unilaterally dictate the content of – indeed, altogether opt out of – both the Takings Clause and the Due Process Clause simply by statutorily recharacterizing traditional property-law concepts." *Id.* at 1201.

That core of traditional property rights is identified by reference to longstanding common-law principles. *Id.* For example, in *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165 (1998), the Court held that the "interest follows principal" rule, which was established under mid-1700's English common law and enjoys near-universal state recognition, was so firmly embedded in property law that it could not be disavowed by the states. By contrast, the quasi-contract rights asserted here are contrary to the equitable principles applied by American courts for over a century. *See* Restatement (Third) of Restitution and Unjust Enrichment § 32(2) (2011); *see also, e.g.*, *Zottman v. City & Cty. of San Francisco*, 20 Cal. 96 (1862); *Springfield Milling Co. v. Lane Cty.*, 5 Or. 265 (1874); *McDonald v. City of N.Y.*, 68 N.Y. 23 (1876); *Addis v. Pittsburg*, 85 Pa. 379 (1877). Accordingly, the Court concludes neither traditional "core" principles of property law, nor Idaho law, provide ENA a legitimate claim of entitlement to compensation for

services it rendered under the IEN project.

### (2) Right to Retain Payments Already Received Pursuant to the Void Contract

ENA also asserts a distinct property right to cash already paid by the state pursuant to the void contract. As a general principle, "[m]oney is certainly property . . . ." *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 443 (1901). However, a takings theory premised on a monetary exaction is both premature and substantively flawed.

A federal takings claim is not ripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186–87 (1985). Idaho Code § 67-9213 states that "[a]ny sum of money advanced by the state in consideration of a void contract shall be repaid forthwith." Attorney General Wasden has filed an action in state court seeking a declaratory judgment that Idaho Code § 67-9213 requires ENA to return state funds it received pursuant to the void contract. However, the state has not yet recovered the funds it disbursed to ENA. Accordingly, the claim premised on this "taking" is not yet ripe.

Furthermore, even if Idaho Code § 67-9213 requires repayment in this case, an obligation to pay money is generally not susceptible to a takings analysis. *See generally Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338–40 (Fed. Cir. 2001) (en banc) (collecting cases); *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S.Ct. 2586, 2599 (2013) (acknowledging that in *Eastern Enterprises v. Apfel*, 524 U.S.

498 (1998), five justices agreed that "the Takings Clause does not apply to government-imposed financial obligations that 'd[o] not operate upon or alter an identified property interest.'") (alterations in original).

The Court also questions whether ENA ever had a legitimate claim of entitlement to the assets in question—cash which the state illegally conveyed pursuant to a void contract. Several states have, on equitable grounds, permitted state and local governments to recover money paid under similar circumstances. *See K & R Eng'g Co. v. United States*, 616 F.2d 469, 477 (Ct. Cl. 1980) (collecting cases). As one court astutely reasoned, "[t]here should, logically, be no difference in ultimate consequence between the case where a (contractor) has been paid under an illegal contract and the one in which payment has not yet been made." *Id.* (internal citations omitted). Idaho has codified that principle in Idaho Code § 67-9213, providing ample notice to all state contractors of the obligation to return funds improperly "advanced" pursuant to void state contracts. This distinguishes the money at issue here from funds otherwise lawfully possessed.

### (3) Rights Asserted Are Not "Property" Within the Meaning of the Takings Clause

The takings claims fail for a second reason: ENA's rights in quasi-contract, if any, do not constitute a cognizable property interest under the Takings Clause.

The principles applicable to ordinary contractual rights are analogous here.[4]  A

---

[4] The Court is not aware of any authority directly addressing whether quasi-contract rights can give rise to a Takings Clause claim.

valid contract may create a property right for purposes of the Fifth and Fourteenth Amendments. *Lynch v. United States*, 292 U.S. 571, 579 (1934). However, the Takings Clause does not provide a federal remedy for every breach of contract by a government agency. *San Bernardino Physicians' Servs. Medical Group v. County of San Bernardino*, 825 F.2d 1404, 1408 (9th Cir. 1987). Two broad principles justify this line-drawing. First, in the context of public contracts, "the Government acts in its commercial or proprietary capacity . . . rather than its sovereign capacity." *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed. Cir. 2001).[5] Thus, any "remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights." *Id.* Second, federal courts are reluctant to embroil the judiciary in the management and operation of state contract disputes. As the Ninth Circuit has stated, "[i]t is neither workable nor within the intent of § 1983 to convert every breach of contract claim against a state into a federal claim." *San Bernardino*, 825 F.2d at 1408; *see also id.* at 1409 ("It may well be that the requirements of federalism have more to do with the line we draw than the shadings of contract entitlement doctrine.").

Courts have recognized only two types of contracts that give rise to constitutionally-protected property interests:

> [T]he first type arises where the contract confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare

---

[5] The Supreme Court has repeatedly recognized that "[t]he two characters which the government possesses as a contractor and as a sovereign cannot be . . . fused; nor can the [government] while sued in one character be made liable in damages for [its] acts done in the other." *Horowitz v. United States*, 267 U.S. 458, 461 (1925) (quoting *Jones v. United States*, 1 Ct.Cl. 383, 384 (1865)).

benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.' The second, albeit related type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause.

*Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1399 (3d Cir. 1991))

(quoting *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988).

Furthermore, "the farther the purely contractual claim is from an interest as central to the individual as employment, the more difficult it is to extend it constitutional protection." *San Bernardino.*, 825 F.2d at 1409.

While acknowledging that typical commercial contract disputes may not rise to a violation of property rights, ENA asserts that courts have found a "property interest[] in compensation for work already performed" under a government contract. *Pl.'s Br.* at 12. The cases cited by ENA are inapposite here. They address entitlements that were both protected by contract and derived from an employment relationship—circumstances not present here.[6]

_____

[6] In *Fuentes v. Shevin*, 407 U.S 67, 87–89 (1983), the Supreme Court held that due process requires a hearing prior to the seizure of a person's possessions—such as kitchen appliances, furniture, electronics—pursuant to a state replevin action. The Court struggles to see its relevance here. *Fuentes* made a passing reference to another Supreme Court case, *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969), which held that the Constitution requires a hearing before prejudgment wage garnishment. *Id.* at 92. This may be the reason for its inclusion in Plaintiff's Brief. However, *Sniadach* is equally inapplicable, because the Court assumed without argument that the Plaintiff had a legitimate claim of entitlement to the wages at issue, and focused instead on what process was due.

Next, in *Stodghill v. Wellston Sch. Dist.*, No. 4:05-CV-1417 CEJ, 2006 WL 2673130, at *16 (E.D. Mo. Sept. 18, 2006), *rev'd on other grounds*, 512 F.3d 472 (8th Cir. 2008), the court held that a school superintendent had a protectable interest in "contractually-guaranteed" compensation for work performed pursuant to an enforceable contract with the school district.

Notwithstanding the fundamental differences between a contract for employment and one for services, ENA's reliance on these cases misplaced simply because ENA lacks a valid contract.

ENA also urges the Court to find that "this case is not a typical breach action by a temporary state contractor." *Id.* The IEN was based on more permanent grounds than an ordinary contract, ENA argues, because it required the coordination of regulated telecommunications services with other federal and state programs. *Pl.'s Br.* at 13. However, the void agreement did not confer upon ENA a status characterized by "dependence" or "permanence," such as the case with welfare benefits and tenure. ENA's relationship with the state was far removed from the employment context and not qualitatively different from that of an ordinary government contractor. *See, e.g.*, *San Bernardino,* 825 F.2d 1404 (no property interest in contract to provide medical services to a county-operated medical center); *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 965–67 (2d Cir. 1988) ("we hesitate . . . to constitutionalize contractual interests that are not associated with any cognizable status of the claimant beyond its temporary role as a government contractor"). Indeed, ENA's claim to entitlement is weakened by the fact that it had no valid contractual rights.

For all of these reasons, the Court finds that the quasi-contractual rights asserted by ENA are not "property interests" protected by the Fifth and Fourteenth Amendments. Consequently, the Complaint fails to state a claim under the Takings Claim.

## A.      *Procedural Due Process Claim*

The Due Process Clause provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." To establish a procedural due process claim, Plaintiff must establish: (1) a deprivation of a constitutionally protected liberty or

property interest; (2) without adequate process. *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008).

Plaintiff has failed to establish both elements. For the same reasons set forth above in analyzing the Takings Clause claim, ENA cannot establish a constitutionally protected property interest. Moreover, the Complaint fails to allege how the state procedures are inadequate. *See Lillehaug v. City of Sioux Falls*, 788 F.2d 1349, 1352 (8th Cir. 1986) ("[plaintiff] must do more than simply assert a deprivation of a protected property interest . . . . The claimant also must show that the state procedures available to challenge the deprivation are inadequate and therefore do not meet due process standards."). The requirement of an opportunity for a hearing prior to the alleged deprivation of rights was fully satisfied here. ENA will be allowed to litigate its unjust enrichment claim and challenge the state's application of Idaho Code § 67-9213 in the pending state court declaratory judgment action filed by Attorney General Wasden.

Consequently, the Complaint fails adequately to allege a violation of ENA's procedural due process rights.

A.    *Substantive Due Process Claim*

ENA's due process claim was framed as a violation of procedural due process in both the First Amended Complaint and Plaintiff's opposition brief frame. See *First Amended Compl.* ¶¶ 1(b), 1(f), 86. Plaintiff's counsel asserted for the first time in oral argument that ENA's procedural and substantive due process rights were violated by the complained-of conduct. Even assuming, *arguendo*, that it is properly before the Court,

ENA is unable to sustain this substantive due process claim.

To establish a violation of substantive due process, a claimant must first establish that the interest being deprived is a "fundamental right." *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012). "The Supreme Court has described the 'fundamental' rights protected by substantive due process as 'those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected by the Fourteenth Amendment.'" *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997)). "Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." *Id.*

Next, a claimant must establish that any deprivation was effected through "conscience shocking behavior by the government." *Brittain v. Hansen*, 451 F.3d 982, 991, 992 (9th Cir. 2006). To constitute a conscience-shocking abuse of government power, government action "must amount to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.'" *Shanks v. Dressel*, 540 F.3d 1082, 1088 (*quoting City of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

ENA's substantive due process claim fails in both regards. The right to compensation for work performed pursuant to a void government contract does not rise to the level of a "fundamental right." *See Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) ("Routine state-created contractual rights are not 'deeply rooted in this Nation's

history and tradition,' and, although important, are not so vital that 'neither liberty nor justice would exist if [they] were sacrificed.'"); *see also, e.g.*, *Reich v. Beharry*, 883 F.2d 239, 243–45 (3d Cir. 1989) (government's refusal to pay bill for professional services did not violate substantive due process). Moreover, nothing in this case amounts to an "abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." *Id.* (internal citations omitted). Therefore, the court finds that ENA fails to state a claim for a violation of substantive due process.

### B. Contracts Clause Claim

The Contracts Clause of the U.S. Constitution states in relevant part: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. In evaluating a Contracts Clause claim, the Court must determine: (1) "whether there is a contractual relationship"; (2) "whether a change in law impairs that contractual relationship"; and (3) "whether the impairment is substantial." *General Motors Corp. v. Romein*, 503 U.S. 181 (1992). Defendants move to dismiss ENA's Contract Clause claims, arguing both that ENA has no protectable contract interest and that any right, if any, was not impaired by legislative action. The Court agrees.

To begin, ENA's contract with the state was void *ab initio*, and ENA points to no other valid contract interest that was impaired here. Furthermore, no change in law has occurred. The Contracts Clause only prevents the impairment of contracts by legislative action. *See New Orleans Water–Works Co. v. La. Sugar Ref. Co.*, 125 U.S. 18, 30 (1888) (stating that the clause's prohibition "is aimed at the legislative power of the state, and

not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals.").

The Contracts Clause reaches "every form in which the legislative power is exerted," which may include certain executive actions, such as the issuance of "a regulation or order [through] delegated legislative authority." *Ross v. Oregon*, 227 U.S. 150, 162–63 (1913); *see also I.N.S. v. Chadha*, 462 U.S. 919, 986 (1983) (describing the type of administrative rulemaking deemed legislative in nature). However, "executive decisions with respect to how to implement [the] laws are not controlled by the Contract Clause." *Fontana Water Co. v. City of Fontana*, 24 F.3d 246 (9th Cir. 1994).

Here, ENA fails to point to any law or act of a legislative character that impaired its contractual rights. Gwartney's unilateral acts to amend the contract with ENA were ministerial and not reasonably characterized as legislative in nature. *Cf. Kamplain v. Curry Cty. Bd. of Comm'rs*, 159 F.3d 1248, 1252 (10th Cir. 1998) ("[T]he function of awarding of bids is essentially an administrative or executive function."). As for Attorney General Wasden, ENA asserts that his overbroad interpretation of Idaho Code § 67-9213 is effectively a change in law. *Pl.'s Br.* at 15. However, case-by-case interpretation of an existing law, which necessarily arises in the context of enforcement, is distinguishable from the issuance of a prospective policy or regulation of general applicability, which characterizes legislative action. Attorney General Wasden's application of Idaho Code § 67-9213 to the specific circumstances of the IEN project involved only his inherent executive functions.

Accordingly, Plaintiff's Contracts Clause claims against Wasden and Gwartney are properly dismissed, as Plaintiff can allege no valid contract right and any impairment was not accomplished by a change in law.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted and all claims against Gwartney and Attorney General Wasden (Counts I, II, and III of the First Amendment Complaint) are dismissed without prejudice. Because ENA fails to state a constitutional claim under 42 U.S.C. § 1983, we need not reach the issues of qualified immunity, sovereign immunity, or abstention.

In so holding, the Court recognizes that ENA may be forced to shoulder a great economic loss for services provided in good faith to the State of Idaho. This dilemma has been well answered by courts in this state and elsewhere:

> It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect this, or choose to take the hazard, he is a mere volunteer, and suffers only what he ought to have anticipated. If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard.

*Zottman v. City & Cty. of San Francisco*, 20 Cal. 96, 104–05 (1862).

Nor is our conclusion altered by ENA's concern that, absent a holding in their favor, the State will have unfettered discretion to avoid their contractual obligations. "[I]t is no answer to force the[se] claim[s] into ill-fitted constitutional clothing." *Ganci v. N.Y. City Transit Auth.*, 420 F. Supp. 2d 190, 205 (S.D.N.Y.), *aff'd*, 163 F. App'x 7 (2d Cir.

2005). The property interests asserted by ENA are not among those protected by the Fifth or Fourteenth Amendments. Any remedy lies in the Idaho courts.

## ORDER

**IT IS ORDERED:**

1.  Defendants' Motion to Dismiss (Dkt. 21) is **GRANTED** and Counts I, II, and III of the First Amendment Complaint are **DISMISSED WITHOUT PREJUDICE**.

2.  The stay of discovery in this action is hereby lifted. No later than February 17, 2017, the remaining parties shall file a joint Discovery Plan and revised Litigation Plan, pursuant to Rule 26(f)(3) and the Court's model discovery plan (Dkt. 12-3).

3.  The remaining parties shall contact the Court to schedule an interim status conference.

DATED: January 30, 2017

B. Lynn Winmill
Chief Judge
United States District Court